Albert MIRELES, Jr., Petitioner,

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY, Respondent.**

No. 99–0612.

Supreme Court of Texas.

Dec. 9, 1999.

---

George A. Scharmen, II, San Antonio, for Petitioner.

S. Kyle Duncan, Carla Elaina Eldred, Kevin Michael Givens, John Cornyn, Andy

Taylor, Linda Eads, Gregory S. Coleman, Austin, for Respondent.

PER CURIAM.

Albert Mireles, Jr., was stopped for speeding and arrested on suspicion of drunk driving. The arresting officer noted that Mireles had slurred speech and glassy eyes, had a strong odor of alcoholic beverage on his breath, and swayed as he walked. Mireles also failed field sobriety tests. Breath tests administered about one hour later showed Mireles' alcohol concentration to be 0.161 and 0.162. Because Mireles had a blood-alcohol concentration above the legal limit of 0.10,[1] the Texas Department of Public Safety suspended his driver's license. Mireles requested an administrative hearing to challenge the suspension. *See* TEX. TRANSP. CODE § 524.031. At the hearing, the DPS offered the arresting officer's notes and Mireles' breath-test results, but offered no "extrapolation" evidence relating Mireles' alcohol concentration when the tests were administered to his concentration when he was driving. The administrative law judge (ALJ) found that Mireles had an alcohol concentration of 0.10 or more while driving and upheld his license suspension. Mireles appealed to the county court at law, contending that, without extrapolation evidence, the breath-test results were no evidence of his alcohol concentration while driving. The county court determined that the ALJ's decision was supported by substantial evidence and affirmed, as did the court of appeals. 993 S.W.2d 426. We affirm the court of appeals' judgment.

■ Mireles claims the court of appeals erred in affirming his license suspension because his breath-test results, which were taken approximately one hour after he was stopped, were no evidence that his alcohol concentration was 0.10 or more at the time

he was driving. He contends that extrapolation evidence, which would take into account his body weight and his food and alcohol consumption and relate his alcohol concentration when tested to the point in time when he was driving, was necessary to prove his alcohol concentration at the time he was driving. Mireles also argues that alcohol concentration and its extrapolation are scientific evidence subject to certain admissibility criteria, and that because the DPS did not offer proof of reliability, there is no evidence to support his license suspension. We disagree.

We first consider Mireles' contention that, absent extrapolation evidence, his breath-test results are no evidence of his alcohol concentration while driving. Chapter 524 of the Texas Transportation Code outlines the driver's-license-suspension procedure. *See* TEX. TRANSP. CODE § 524.001. If a person is arrested for drunk driving and takes a test that shows his alcohol concentration to be 0.10 or higher, the DPS may suspend his driver's license. *See id.* §§ 524.011, 524.012. A person whose license is suspended may request an administrative hearing to challenge the suspension. *See id.* § 524.031. At the hearing, the DPS must prove by a preponderance of the evidence that the person had an alcohol concentration of 0.10 or more while operating a motor vehicle in a public place. *See id.* § 524.035. Such a finding may not be made if the person had an alcohol concentration of less than 0.10 at the time the test was taken. *See id.* § 524.035(d). Nothing in the statutory framework specifically mandates extrapolation evidence.

■ The license-suspension statute serves the remedial purpose of protecting public safety by quickly removing drunk drivers from the road. *See Ex parte Arnold*, 916 S.W.2d 640, 642 (Tex.App.—Aus-

---

1. The Legislature has amended the definition of intoxication to include persons with an alcohol concentration of 0.08 or more. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 234, § 1(2)(B), 1999 Tex. Sess. Law Serv. 1082 (codified at TEX. PEN.CODE § 49.01). This definition does not apply to this case, however, as it did not become effective until September 1, 1999. *See id.*

tin 1996, pet. ref'd). This purpose would be thwarted if the driver's license suspension statute were interpreted to impose a more stringent evidentiary standard than that required to prosecute criminal drunk-driving charges. In the criminal context, Texas courts have determined that unextrapolated breath-test results, even though obtained after a lag time between driving and administration of the test, are probative evidence for the trier of fact to consider and weigh. *See Forte v. State,* 707 S.W.2d 89, 94–95 (Tex.Crim.App.1986). The Court of Criminal Appeals has recognized that, when the State relies on the 0.10 definition of intoxication to prosecute a person for drunk driving, its proof will usually be in the form of a chemical test showing the defendant's alcohol concentration "near the time of the offense." *Id.* at 94–95. However, a conviction will not necessarily follow from the breath-test evidence. *See id.* at 94. The jury must still be convinced beyond a reasonable doubt that an inference can be drawn from the test results that the person's alcohol concentration exceeded the statutory threshold when the offense occurred. *See id.* at 94–95. Further, there is nothing to prevent a claim that the person's alcohol concentration increased between the arrest and the test. *See id.* at 95. Similarly, in *Owen v. State,* the court, in considering the sufficiency of the evidence to support a drunk driving conviction, held that "the jury could have, without other evidence, inferred from the results of the intoxilyzer tests given just over an hour later that Owen had an alcohol concentration of 0.10 or more at the time of the accident." 905 S.W.2d 434, 437–39 (Tex.App.—Waco 1995, pet. ref'd).

■ When reviewing the sufficiency of the evidence to support a criminal conviction, courts are required to "view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Casillas v. State,* 733 S.W.2d 158, 160 (Tex.Crim.App.1986). On the other hand, courts review administrative license suspension decisions under the substantial evidence standard. *See* Tex. Transp. Code § 524.041; Tex. Gov't Code § 2001.174. A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. *See* Tex. Gov't Code § 2001.174; *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984). The issue for the reviewing court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action. *See City of El Paso v. Public Util. Comm'n,* 883 S.W.2d 179, 185 (Tex.1994). Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *See Railroad Comm'n of Tex. v. Torch Operating Co.,* 912 S.W.2d 790, 792–93 (Tex.1995). In fact, an administrative decision may be sustained even if the evidence preponderates against it. *See id.* at 793. If unextrapolated breath-test results are sufficient to sustain a criminal conviction for drunk driving, they are certainly sufficient to sustain an administrative license suspension.

■ Mireles also claims that alcohol concentration and its extrapolation are scientific evidence subject to certain admissibility criteria, and that because the DPS did not offer proof of reliability, there is no evidence in the record to support his license suspension. It is true that breath-test results are scientific evidence and that, to be proven reliable, they must satisfy a three-part test: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *See Hartman v. State,* 946 S.W.2d 60, 62 (Tex.Crim.App.1997) (citing *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim.App. 1992)). But the Legislature has statutorily recognized the scientific theory and technique behind breath tests, and Mireles

does not claim that the test was improperly performed. *See* Tex. Transp. Code § 524.038 (mandating the admissibility of alcohol-concentration evidence); *see also Stevenson v. State*, 895 S.W.2d 694, 696 (Tex.Crim.App.1995) (stating "[t]he statute recognizes the scientific reliability of breath tests" when properly performed); *Texas Dep't of Pub. Safety v. Jimenez*, 995 S.W.2d 834, 837–38 (Tex.App.—Austin 1999, no pet. h.) (holding "the [L]egislature has statutorily recognized the validity of the theory and technique behind the intoxilyzer through Transportation Code section 524.038"). Although scientific extrapolation evidence, if offered, may be subject to a reliability analysis, *see Hartman*, 946 S.W.2d at 62–63, such evidence is not required to establish the breath test's reliability. Accordingly, Mireles' breath-test results were properly admitted.

Mireles' breath-test results are more than a scintilla of evidence to support the ALJ's finding that Mireles had an alcohol concentration of 0.10 or more while driving. Accordingly, without hearing oral argument, under Rule 59.1 of the Texas Rules of Appellate Procedure, we grant Mireles' petition for review and affirm the court of appeals' judgment.