Gerald Andrews v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-061-CR

     GERALD ANDREWS,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the County Court
Navarro County, Texas
Trial Court # 48232
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Gerald Andrews pleaded nolo contendere to misdemeanor driving while intoxicated (second
offense) after the court denied his motion to suppress evidence. Pursuant to the State’s plea
recommendation, the court sentenced him to one year’s confinement and a $750 fine, suspended
imposition of sentence, and placed him on community supervision for two years. Andrews appeals
the denial of his suppression motion.
      The facts are not disputed.


 Department of Public Safety trooper John Cabano saw Andrews
pull to the paved shoulder of Interstate 45 at about one o’clock in the morning. Cabano pulled up
behind Andrews “to see if they might need assistance.” He saw Andrews’s wife leaning out
through the open passenger door. It appeared to him that she was vomiting. She shut her door
and Andrews began to pull away. Cabano turned on his overhead lights and stopped them “to
make sure everything was okay.” As he testified, he was concerned about a “possible illness. I
have come into situations where heart attacks, spousal abuse, et cetera, out on the interstate.” He
did not suspect “criminal activity” when he stopped them. Cabano testified that the nearest
hospital was “less than five miles away.”
      The State also offered an in-car video of the stop. From the video, it is difficult to discern
exactly what Andrews’s wife was doing as she leaned out of the car. The video then depicts the
Andrewses’ car pulling away. Cabano activated his overhead lights, and Andrews stopped.
      Cabano approached and asked if everything was okay. Andrews responded in the affirmative. 
Cabano smelled the odor of an alcoholic beverage and asked Andrews to step to the rear of the car. 
Andrews did not satisfactorily perform several field sobriety tests, and Cabano arrested him for
driving while intoxicated.
      Andrews contends in his sole point of error that his warrantless stop is not justified by the
community caretaking function recognized by the Court of Criminal Appeals in Wright v. State. 
7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (citing Cady v. Dombrowski, 413 U.S. 433, 93 S. Ct.
2523, 37 L. Ed. 2d 706 (1973)). The State counters that the facts do fit within this narrow
exception. The State argues alternatively that trooper Cabano had reasonable suspicion of criminal
activity sufficient to justify a temporary detention.
      The Fourth Amendment prohibits “unreasonable searches and seizures.” U.S. Const.
amend. IV. This prohibition extends to “brief investigatory stops such as the stop of [a] vehicle.” 
United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 694-95, 66 L. Ed. 2d 621, 628
(1981). “In general, law enforcement personnel may not search or seize an individual absent a
warrant based on probable cause.” Wright, 7 S.W.3d at 150. As previously stated, two
exceptions to this general rule are pertinent to this appeal: (1) the community caretaking exception
recognized by the Court of Criminal Appeals in Wright; and (2) the concept of reasonable
suspicion first recognized in Terry v. Ohio. 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d
889, 906 (1968).
COMMUNITY CARETAKING EXCEPTION
      The Court of Criminal Appeals has determined that a search or seizure is not “unreasonable”
when it is done pursuant to a valid exercise of the community caretaking function. See Wright,
7 S.W.3d at 151. The Court observed that this is an exception of “narrow applicability.” Id. at
152.
      The Court provided a list of four non-exclusive factors to be considered when deciding
whether a search or seizure is justified by this narrow exception:
      (1)  the nature and level of the distress exhibited by the individual;
 
      (2)  the location of the individual;
 
      (3)  whether or not the individual was alone and/or had access to assistance
independent of that offered by the officer; and
 
      (4)  to what extent the individual—if not assisted—presented a danger to himself or
others.

Id. Our application of these factors to Andrews’s case leads us to conclude that the community
caretaking exception does not apply.
      The facts of this case are remarkably similar to those presented in Wright. See Wright v.
State, 18 S.W.3d 245, 246 (Tex. App.—Austin 2000, pet. ref’d) (on remand from the Court of
Criminal Appeals). Regarding the first factor (nature and level of distress), the court observed,
“[The passenger] appeared to be having some gastric distress . . . . Nothing indicated that the
passenger’s condition was any more serious than an upset stomach.” Id.
      The Texarkana Court of Appeals reviewed a case involving an individual stopped in a location
somewhat similar to that where Cabano stopped Andrews. See Corbin v. State, 33 S.W.3d 90,
94 (Tex. App.—Texarkana 2000, pet. granted) (“The location of the individual was on a somewhat
isolated stretch of interstate highway.”).


 Although the court ultimately concluded that the stop
at issue was justified by the community caretaking exception, the court characterized the strength
of this factor as “fairly low.” Id. at 95; cf. Morfin v. State, 34 S.W.3d 664, 666 (Tex. App.—San
Antonio 2000, no pet.) (car parked in “very high crime area”); Chilman v. State, 22 S.W.3d 50,
55 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (car parked in “a spot where people
normally do not park”).



      The intermediate court’s analysis in Wright properly analyzes the last two factors insofar as
they bear on Andrews’s case.
Appellant was . . . in . . . a car that was being driven in a lawful manner on a public
highway. [The passenger] appeared to be having some gastric distress, but . . . the driver
. . . could have aided and assisted [the passenger]. . . . None of the car's occupants
indicated that they were in need of additional help. Nothing indicated that the [trooper’s]
assistance was necessary or that his help would add to the comfort or welfare of [the
passenger]. Nothing supported a reasonable belief that [the passenger] was a danger to
[her]self or to others.

Wright, 18 S.W.3d at 247.
      We agree with this analysis. Accordingly, we hold that the stop is not justified by the
community caretaking exception.
REASONABLE SUSPICION
      The State argues in the alternative that the stop is justified because Trooper Cabano had
reasonable suspicion under the totality of the circumstances to warrant a temporary detention.
Under Terry v. Ohio, a law enforcement agent has what has come to be known as “reasonable
suspicion” to temporarily detain a suspect when the agent is aware of “specific and articulable
facts, which, taken together with rational inferences from those facts, reasonably warrant [the]
intrusion.” 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; see also Carmouche v. State,
10 S.W.3d 323, 328 (Tex. Crim. App. 2000).
      According to the State:
At one o’clock in the morning, Appellant was driving away from an establishment that
served alcohol. The vehicle pulled to the side of the road for no apparent reason, and the
passenger was purging a night’s worth of alcohol onto the pavement. This would give
rise to a reasonable and articulated suspicion that Appellant was engaged in criminal
activity.

The State recites five facts which it contends support a finding of reasonable suspicion: (1) early
morning hour; (2) departing from an establishment that served alcohol; (3) pulling to the side of
the road for no apparent reason; (4) regurgitation; and (5) due to overconsumption of alcohol.
      Assuming without deciding that these facts would support a finding of reasonable suspicion,
the two of these facts which would be critical to such a finding (i.e., that the Andrewses had just
departed from an establishment that served alcohol and that Mrs. Andrews had consumed “too
much” alcohol) were unknown to Trooper Cabano when he decided to stop their car. A “Terry
stop” must rest on the facts known to the officer at the time of the stop—not on subsequently-acquired knowledge. See Terry, 392 U.S. at 21-22, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906
(“would the facts available to the officer at the moment of the seizure or the search ‘warrant a man
of reasonable caution in the belief’ that the action taken was appropriate?”) (emphasis added);
accord Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).
      Trooper Cabano testified that he did not suspect “criminal activity” when he stopped the
Andrewses. The facts known to him at that time (i.e., that Andrews pulled to the side of the road
for no apparent reason in the early morning hours and his passenger regurgitated) do not give rise
to a reasonable suspicion of any criminal activity. Accordingly, we reject the State’s reasonable
suspicion argument.
      For the foregoing reasons, we sustain Andrews’s sole point of error.
CONCLUSION
      We echo the concluding remarks of the Austin Court of Appeals in Wright.
Although Deputy Tomlinson articulated concerns about appellant’s safety, the
concerns expressed were unsupported by articulated, reasonable facts. The reasons for
the stop given by the officer were unreasonably speculative . . . . The totality of the
circumstances did not justify official intrusion upon appellant’s constitutional right to be
secure in his person. The stop and detention of appellant was simply an unreasonable
exercise of authority by the officer in violation of appellant’s constitutional rights.

Wright, 18 S.W.3d at 247.
      We reverse the judgment and remand this cause to the trial court for further proceedings
consistent with this opinion.
 
                                                                         REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed May 29, 2002
Publish
[CR25]