**Opinion filed August 16, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00298-CV

_____

## TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

## V.

## CAITLIN ELIZABETH ADKINS, Appellee

**On Appeal from the County Court at Law**

**Bosque County, Texas**

**Trial Court Cause No. 4245**

### MEMORANDUM OPINION

The Texas Department of Public Safety appeals from the trial court's order affirming an administrative law judge's decision denying the Department's petition to suspend Caitlin Elizabeth Adkins's driver's license. We affirm.

*Factual and Procedural Background*

The Department issued a notice of suspension of Adkins's driver's license after Trooper Steven Schwartz arrested her for driving under the influence of alcohol by a minor. Adkins

requested an administrative hearing to challenge the suspension, and pursuant to her request, an administrative law judge with the State Office of Administrative Hearings held a hearing.

Trooper Schwartz did not testify at the administrative hearing. The Department introduced into evidence Trooper Schwartz's sworn report relating to an incident that occurred on December 31, 2008. The sworn report was a preprinted, fill-in-the-blank form, which was referred to as a DIC-23. At the beginning of the report, Trooper Schwartz certified that the information contained in the report was true and correct. Next, Trooper Schwartz stated that "[h]e had probable cause to believe and [did] believe that [Adkins] was driving or in actual physical control of a motor vehicle in a public place . . . in this state while intoxicated or under the influence of alcohol. Facts in support of this belief are:" This preliminary statement in the report was followed by several sections, including a section called "[r]easonable suspicion to stop or make contact" and a section called "[p]robable cause for arrest or detention." In the first section of the report, Trooper Schwartz stated that, on December 31, 2008, at 11:45 p.m., he observed a vehicle on FM 1238 in Bosque County. In the section of the report called "[r]easonable suspicion to stop or make contact," Trooper Schwartz stated as follows:

> Vehicle was stopped partially on the roadway with people standing next to the passenger side door. I stopped to attempt to assist the occupants with whatever difficulty they were having. Adkins was seat belted into the front driver's seat. The vehicle was running.

In the next section of the report, Trooper Schwartz stated that Adkins was identified to him as the driver of the vehicle. In the section of the report called "[p]robable cause for arrest or detention," Trooper Schwartz stated as follows:

> a: Signs of intoxication or consumption of alcohol:
> Adkins presented with bloodshot watery eyes and the odor of an alcoholic beverage.
>
> b: Sobriety tasks requested, if any, and performance obtained (explain):
> HGN: lack of smooth pursuit in both the left and right eye.
> PBT: positive result for the presence of alcohol coming from Adkins's breath (0.04).

In the next section of the report, Trooper Schwartz indicated that Adkins was a minor and that he did not request her to provide a blood specimen.

Following the hearing, the administrative law judge issued a decision denying the Department's suspension of Adkins's driver's license. The judge included the following findings of fact in his decision:

1. On December 31, 2008, [Adkins] was under 21 years of age.

2. On that same date, reasonable suspicion to make contact with [Adkins] did not exist. Trooper Schwartz stated that he observed a [vehicle] parked partially on the roadway with people standing next to the passenger side door. According to his report, Trooper Schwartz made contact with [Adkins] to assist the occupants of the vehicle with whatever difficulty they were having. Trooper Schwartz failed to set forth any factors in his report that led him to believe that anyone was having difficulties. He did not allege that his contact was based on a suspicion of criminal conduct or anything other than community caretaking to determine [if] someone was having difficulties. However, he failed to articulate a basis for making community caretaking contact with [Adkins]. Thus, there was not reasonable suspicion to make contact with [Adkins]. *See Wright v. State*, 18 S.W.3d 245 (Tex. App. – Austin 2000).

Based on his findings of fact, the administrative law judge concluded that "the evidence . . . was insufficient to establish all the issues/elements set out in TEX. TRANSP. CODE ANN. § 524.035 by a preponderance of the evidence." Therefore, the judge denied the Department's petition to suspend Adkins's license.

The Department appealed the administrative law judge's decision to the trial court. On March 17, 2010, the trial court heard the appeal. During the hearing, the Department contended that the initial contact between Trooper Schwartz and Adkins was a consensual encounter and that, therefore, the administrative law judge erred by finding that the contact resulted from a community caretaking stop. Following the hearing, the trial court entered an order affirming the decision of the administrative law judge. In the order, the trial court stated that "[t]he evidence submitted by the arresting officer and entered into evidence at the hearing does not sufficiently satisfy the four standards for a community caretaking stop or detention set forth in *Wright v. State*, 18 S.W.3d 245, 246 (Tex. App.—Austin 2000, pet. ref'd)." The Department filed a motion for new trial. After a hearing, the trial court denied the motion. The Department now appeals the trial court's order affirming the administrative law judge's decision to this court.

*Issue on Appeal*

In its sole issue on appeal, the Department contends that the trial court erred by affirming the administrative law judge's decision because the initial interaction between Trooper Schwartz and Adkins was a consensual encounter and not a detention.

*Standard of Review*

When reviewing an administrative license suspension decision, courts use a substantial evidence standard of review. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. *Id.* The issue for the reviewing court is not whether the agency's decision is correct, but only whether the record demonstrates some reasonable basis for the agency's action. *Id.* Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *Id.* An administrative decision may be sustained even if the evidence preponderates against it. *Id.*

We review the trial court's decision de novo. *Tex. Dep't of Pub. Safety v. Gonzales*, 276 S.W.3d 88, 91 (Tex. App.—San Antonio 2008, no pet.). This means that we independently assess the administrative law judge's decision under the substantial evidence standard of review. *Id.* Whether substantial evidence exists to support an administrative law judge's order is a question of law. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006).

By statute, the Department's right to appeal from an administrative decision in a license suspension case is limited to issues of law. TEX. TRANSP. CODE ANN. § 524.041(d) (West 2007). In this appeal, the Department contends that the administrative decision was affected by an error of law. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(D) (West 2008). Specifically, the Department asserts that the administrative law judge erred by holding that the initial interaction between Trooper Schwartz and Adkins was a community caretaking stop. We review questions of law de novo. *Tex. Dep't of Pub. Safety v. Jauregui*, 176 S.W.3d 846, 848–49 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

*Analysis*

In an administrative license suspension hearing, the Department bears the burden of proving by a preponderance of the evidence that "reasonable suspicion to stop or probable cause to arrest the person existed." TEX. TRANSP. CODE ANN. § 524.035(a)(2) (West Supp. 2012). The administrative law judge found that Trooper Schwartz lacked reasonable suspicion to make

contact with Adkins. He also found that Trooper Schwartz "did not allege that his contact was based on . . . anything other than community caretaking to determine [if] someone was having difficulties" and that Trooper Schwartz "failed to articulate a basis for making community caretaking contact with [Adkins]."

The Department contends that Trooper Schwartz did not make a community caretaking stop. The purpose of the community caretaking exception to warrantless seizures is to allow an officer to "seize" and assist an individual whom the officer reasonably believes is in need of help. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002). We note that, as found by the administrative law judge, Trooper Schwartz did not articulate a factual basis in his report that would have justified a community caretaking stop of Adkins. *See Gonzales v. State*, No. PD-0683-11, 2012 WL 2400763 (Tex. Crim. App. June 27, 2012).

The Department also contends that the initial interaction between Trooper Schwartz and Adkins was a consensual encounter. Not all encounters between the police and citizens implicate the Fourth Amendment's protection against unreasonable seizures. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011); *State v. Garcia-Cantu*, 253 S.W.3d 236, 238 (Tex. Crim. App. 2008). Unlike investigative detentions and arrests, which are seizures for Fourth Amendment purposes, an encounter is a consensual interaction that the citizen may terminate at any time. *Woodard*, 341 S.W.3d at 411; *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).

Law enforcement officers are permitted to approach individuals without probable cause or reasonable suspicion to ask questions or even to request a search. *Bostick*, 501 U.S. at 434–35; *Florida v. Royer*, 460 U.S. 491, 497–98 (1983); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999). Such an encounter does not require any justification on the officer's part. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *Woodard*, 341 S.W.3d at 411. So long as a reasonable person would feel free to disregard the officer's questions and go about his or her business, the encounter is consensual and merits no further constitutional analysis. *Bostick*, 501 U.S. at 434; *Johnson*, 912 S.W.2d at 235. Only when the implication arises that an officer's display of authority cannot be ignored, avoided, or ended does a Fourth Amendment seizure occur. *Garcia-Cantu*, 253 S.W.3d at 243; *State v. Priddy*, 321 S.W.3d 82, 87 (Tex. App.—Fort Worth 2010, pet. ref'd).

Whether a police-citizen interaction is a consensual encounter is determined by the totality of the circumstances; the appropriate inquiry is "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 436; *Priddy*, 321 S.W.3d at 87. Courts consider the time, place, and surrounding circumstances of a police-citizen interaction when determining whether the interaction was consensual. *Woodard*, 341 S.W.3d at 411. However, the officer's conduct is the most important factor when deciding whether the interaction was consensual or a Fourth Amendment seizure. *Id.* Circumstances indicating that a police-citizen encounter is a seizure, rather than a consensual encounter, include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, flashing lights, or blocking of a suspect's vehicle. *Priddy*, 321 S.W.3d at 87.

The fact that a citizen's vehicle was already parked or stopped when the officer arrived at the scene does not answer the inquiry of whether an interaction between the officer and citizen constituted an encounter or a detention. *See Garcia-Cantu*, 253 S.W.3d at 245 n.43; *Garza v. State*, 771 S.W.2d 549, 556 (Tex. Crim. App. 1989); *Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.). In such cases, an officer's use of his vehicle's flashing lights or emergency lights may amount to a display of authority that is sufficient to trigger a detention. *Garcia-Cantu*, 253 S.W.3d at 245 n.43 ("The use of 'blue flashers' or police emergency lights are frequently held sufficient to constitute a detention or seizure of a citizen, either in a parked or moving car."). On the other hand, an officer may activate his lights for highway safety concerns and not as a display of authority. *Martin*, 104 S.W.3d at 301. A detention occurs "when a person is sitting in a parked car and a police officer orders him to roll down the window or to open the door." *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex. Crim. App. [Panel Op.] 1979). However, a detention does not occur if an officer merely approaches a parked car and knocks on the window. *Merideth v. State*, 603 S.W.2d 872, 873 (Tex. Crim. App. [Panel Op.] 1980); *Martin*, 104 S.W.3d at 301.

In its brief, the Department contends that, "[b]ased on the evidence in the record, the initial interaction between Trooper Schwartz and Adkins was an encounter." To support its contention, the Department relies on a lack of evidence that Trooper Schwartz exercised a display of authority, such as by activating his overhead lights. The Department states that,

6

"[b]ecause Adkins was already stopped on the side of the road and because there is no evidence of a show of authority by the trooper, it is reasonable to assume the interaction between Trooper Schwartz and Adkins was an encounter."

The Department's contention ignores the fact that it had the burden of proving the elements of its case by a preponderance of the evidence at the administrative hearing. Section 524.035. Thus, the Department had the evidentiary burden to prove that the initial interaction between Trooper Schwartz and Adkins was an encounter. Adkins did not have the evidentiary burden to establish that the initial interaction was not an encounter. The Department did not present any evidence that Trooper Schwartz did not exercise a show of authority. During the administrative hearing, no evidence was presented on the issue of whether or not Trooper Schwartz exercised a show of authority. In the absence of evidence on the issue, the Department could not satisfy its burden of proof.

Applying the substantial evidence standard of review, we cannot conclude that the administrative law judge's decision is not reasonably supported by the record before us. The evidence relating to the initial interaction between Trooper Schwartz and Adkins was very limited. It consisted of a few sentences in Trooper Schwartz's sworn report. The evidence did not show whether or not Trooper Schwartz activated his flashing lights or gave any orders or directions to Adkins. The record does not contain any evidence as to what Trooper Schwartz said to Adkins or what she said to him. Nor does the record contain any evidence as to the tone of voice used by Trooper Schwartz. Based on the evidence in the record, we conclude that the administrative law judge did not err by failing to conclude that the initial interaction between Trooper Schwartz and Adkins was an encounter and that, therefore, the trial court did not err by affirming the administrative law judge's decision. The Department's issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

August 16, 2012                                                JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

7